**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., COLAKOGLU METALURJI A.S. and COLAKOGLU DIS TICARET A.S., | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Court No. 23-00059 |
| v. | ) ) | |
| THE UNITED STATES | ) ) | |
| *Defendants*. | ) ) ) ) ) ) | |

**COMPLAINT**

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade,

Kaptan Demir Celik Endustrisi Ve Ticaret A.S., Colakoglu Metalurji A.S. and Colakoglu Dis

Ticaret A.S., ("Plaintiffs") by and through their attorneys, allege and state as follows:

**ADMINISTRATIVE DECISION TO BE REVIEWED**

1.      This is an appeal from the final results of the antidumping duty administrative

review of *Steel Concrete Reinforcing Bar From the Republic of Turkey* ("Rebar from Turkey").

The period of review ("POR") is July 1, 2020 through June 30, 2021.

2.      On February 7, 2023, the U.S. Department of Commerce, International Trade

Administration, Enforcement and Compliance ("Commerce") published its final results finding

that rebar from Turkey is being or is likely being sold at less than normal value in the United

States. *See Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of*

*Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020–*

*2021*, 88 Fed. Reg. 7941 (Dep't Commerce Feb. 7, 2023) ("*Final AD Results*"). Commerce's

1

factual and legal conclusions underlying the *Final AD Results* are set forth in its Issues and

Decision Memorandum. Memorandum from J. Maeder to L. Wang, re: Issues and Decision

Memorandum for the Final Results of the Antidumping Duty Administrative Review

Antidumping duty Order on Steel Concrete Reinforcing Bar from Turkey (February 1, 2023)

("*Final I&D Memo*") (available at https://www.govinfo.gov/content/pkg/FR-2023-02-

07/pdf/2023-02592.pdf#page=1).

## JURISDICTION

3.        Plaintiffs bring this action pursuant to Sections 516A(a)(2)(A)(i)(I) and

516A(a)(2)(B)(iii) of the Tariff Act of 1930, *as amended* (the "Act"), 19 U.S.C.

§§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii). Plaintiffs contest Commerce's *Final AD Results*,

specifically as applied to Plaintiffs. This Court has jurisdiction over this action pursuant to 28

U.S.C. § 1581(c).

## STANDING

4.        Plaintiffs are interested parties to the proceeding under Sections 516A(f)(3) and

771(9)(A) of the Act, codified at 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A), respectively.

Plaintiffs are foreign manufacturers and exporters of the subject merchandise, and participated

actively at all stages of the review by submitting questionnaire responses and administrative case

briefs.

5.        Plaintiffs, therefore, have standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6.        This Complaint is being filed within thirty (30) days of the filing of Plaintiff's

summons in this action.  The summons was timely filed on March 9, 2023 (ECF No. 1), within

thirty (30) days of Commerce's publication of the *Final AD Results*. *See* 88 Fed. Reg. at 7941. In

accordance with USCIT R. 3(a)(2), 5(e) and 6(a), and pursuant to 19 U.S.C.

§ 1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c), Plaintiff's Complaint is timely.

## STANDARD OF REVIEW

7.     This Court must remand any administrative determination by Commerce which is

"unsupported by substantial evidence on the record" as a whole, or is "otherwise not in

accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

8.     When reviewing whether Commerce's actions are unsupported by substantial

evidence, the Court assesses whether the agency action is "unreasonable" given the record as a

whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Substantial

evidence represents "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed.

Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

9.     When reviewing Commerce's statutory interpretations, the Court applies the two-

part framework set forth in the Supreme Court's opinion in *Chevron*. *Union Steel v. United

States*, 713 F.3d 1101, 1106–07 (Fed. Cir. 2013) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def.

Council, Inc.,* 467 U.S. 837, 842–43 (1984)). Under *Chevron*, to determine whether an agency's

interpretation of the statute is entitled to deference, the Court conducts a two-part test. Under the

first prong of this test, where Congress has spoken directly to the question at issue, the Court and

the agency must give effect to the unambiguously expressed intent of Congress. *See* 467 U.S. at

842–43. If, however, the statute is vague or silent on an issue, the Court upholds the agency's

interpretation provided that the interpretation is reasonable. *See id*. at 843.

10.     This Court has found Commerce's determinations unlawful "where Commerce

has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to

provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. v. United States*, 20 CIT 573,

575, 927 F. Supp. 451, 454 (1996); *see also Asociacion Colombiana de Exportadores de Flores,*
*v. United States*, 22 CIT 173, 185, 6 F. Supp. 2d 865, 880 (1998).

## STATEMENT OF FACTS

11.     On July 1, 2021, Commerce published a notice of opportunity to request a review
of the AD order on rebar from Turkey covering the period of July 1, 2021 through June 30, 2022.
*See Antidumping or Countervailing Duty Order, Finding or Suspended Investigation;*
*Opportunity to Request Administrative Review*, 86 Fed. Reg. 35065 (Dep't of Commerce July 1,
2021).

12.     On July 30, 2021, Colakoglu requested an administrative review of its sales and
shipments of subject merchandise for the administrative review period of July 1, 2021 through
June 30, 2022.

13.     On July 30, 2021, Kaptan requested an administrative review of its sales and
shipments of subject merchandise for the administrative review period of July 1, 2021 through
June 30, 2022.

14.     Commerce initiated an administrative review of the antidumping order on steel
concrete reinforcing bar (rebar) from the Republic of Turkey covering the period of review July
1, 2020 through June 30, 2021.  *See Initiation of Antidumping and Countervailing Duty*
*Administrative Reviews,* 86 Fed. Reg. 50034 (Dep't of Commerce September 7, 2021), *corrected*
*by Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg.
55572 (Dep't of Commerce Oct. 6, 2021); *Initiation of Antidumping and Countervailing Duty*
*Administrative Reviews*, 86 Fed. Reg. 57808 (Dep't of Commerce Oct. 19, 2021).

15.     Both Colakoglu and Kaptan were selected as the two mandatory respondents in
Commerce's review.  Throughout the review, Colakoglu and Kaptan, respectively, submitted
timely and complete responses to Commerce's questionnaires.  *See* Colakoglu's Response to

Section A Questionnaire (Oct. 29, 2021); Colakoglu's Response to Section B Questionnaire (Nov. 22, 2021); Colakoglu's Response to Section C Questionnaire (Nov. 22, 2021); Colakoglu Section D Questionnaire Response (Dec. 1, 2021); Colakoglu's Response to Supplemental Sections A-C Questionnaire at (Mar. 11, 2022, resubmitted May 19, 2022); Colakoglu's Response to Second Supplemental Sections A-C Questionnaire (Third Supplemental Questionnaire Response) (June 6, 2022); Colakoglu's Response to the Second Supplemental Section D Questionnaire (Fourth Supplemental Questionnaire Response) (June 21, 2022); Colakoglu's Response to Revised Reporting Requirements Supplemental Questionnaire (Fifth Supplemental Questionnaire Response) (July 20, 2022); Kaptan's Response to the Department's Section A Questionnaire (Oct. 29, 202); Kaptan Demir Celik Endustrisi ve Ticaret A.S.'s Section B Questionnaire Response (Nov. 22, 2021); Kaptan Demir Celik Endustrisi ve Ticaret A.S.'s Section C Questionnaire Response (Nov. 22, 2021); and Kaptan Demir Celik Endustrisi ve Ticaret A.S.'s Section D Questionnaire Response (December 1, 2021); Kaptan's Response to Supplemental Sections A-C Questionnaire (Mar. 11, 2022); Kaptan's Response to Supplemental Section D Questionnaire (Apr. 4, 2022); Kaptan's Response to Second Supplemental Section D Questionnaire (Question 1) (May 13, 2022); Kaptan's Response to Second Supplemental Section D Questionnaire (Questions 2-4) (May 20, 2022); Kaptan Demir Celik Endustrisi ve Ticaret A.S.'s Response to the Department's Second Supplemental Sections A-C Questionnaire (May 20, 2022); Kaptan's Response to Third Supplemental Section D Questionnaire (June 6, 2022); and Kaptan's Response to Revised Reporting Requirements Supplemental Questionnaire (Fifth Supplemental Questionnaire Response) (July 20, 2022).

16.    On August 5, 2022, Commerce issued its preliminary results in which it assigned Colakoglu an individual rate of 1.13 percent and Kaptan an individual rate of 5.79 percent. *Steel*

*Concrete Reinforcing Bar from the Republic of Turkey*, 87 Fed. Reg. 47975 (Dep't of Commerce Aug. 5, 2022) (prelim. AD results & prelim. determ. of no shipments; 2020-2021), and accompanying Issues and Decision Memorandum (*Preliminary AD Results*).

17.     In the *Preliminary AD Results*, although Colakoglu reported the sales order date as the date of sale because there were no changes to the material terms of sale after the order date, Commerce relied on invoice date as the date of sale for U.S. sales.  *See Preliminary AD Results* at 11.

18.     In the *Preliminary AD Results*, although Kaptan reported the contact date as the date of sale and provided record evidence demonstrating that the material terms of sale did not change after the contract date, Commerce relied on the invoice date as the date of sale for U.S. sales.  *See Preliminary AD Results* at 12.

19.     Commerce also treated section 232 duties as "United States import duties," which resulted in the deduction of such duties from the calculated U.S. price.  The impact of this decision artificially reduces the U.S. price and increases the AD margin.  *See Preliminary AD Results* at 12-14.

20.     Kaptan and Colakoglu submitted a joint case brief to Commerce on September 13, 2022.  *See* Respondents' Letter, "Turkish Respondents' Case Brief" (Sept. 13, 2022).  In their case brief, Kaptan and Colakoglu provided ample record evidence and precedent demonstrating that this 2020-2021 review of the rebar from Turkey order is different from prior reviews and that the appropriate U.S. date of sale for Kaptan was the contract date and the appropriate U.S. date of sale for Colakoglu is sale order date (*i.e.*, contract date).  *Id.* at 18-28.

21.     With respect to Kaptan, Kaptan demonstrated that there were no changes to the material terms of sale after the contract date, and that all parties agree in the contract that there

will be no changes to the terms of the sale. *Id*. at 20-23.  With respect to Colakoglu, Colakoglu

provided almost three dozen samples supporting that its contracts do not change after the date of

sale, and that there are no deviations from to the terms of sale as defined in the sales contract.  *Id.*

at 23-28.  The Turkish Respondents argued that, in both instances, Commerce improperly ignored

its obligation to review the unique circumstances and factual evidence on the record of this

review when making its date of sale determination. Given the unique facts of this review cycle, in

which the contracts did not change prior to the invoice date for Turkish Respondents, Commerce

should have relied on contract date as the date of U.S. sales because that was the date on which

material terms of U.S. sales were fixed.  *Id.* at 2.

22.     On September 21, 2022, Colakoglu and Kaptan submitted a joint rebuttal brief.

*See* Rebuttal Brief of Turkish Respondents (Sept. 21, 2022).  In their rebuttal brief the Turkish

Respondents argued, *inter alia*, that Colakoglu's Section 232 payments should not be set to 25

percent of gross unit price, as requested by the petitioner in its case brief, because it would be

contrary to Commerce's standard calculation.  *See id.* at 20-21.  Although Colakoglu disagreed

with Commerce's adjustment for Section 232 duties generally, Colakoglu provided the

information related to Section 232 duties in the form and manner requested, in response to

Commerce's questionnaires.  *See* Colakoglu's Response to Section A Questionnaire at Exh. A-19

(Oct. 29, 2021); Colakoglu's Response to Section C Questionnaire at Exh. C-13 (Nov. 22, 2021);

Colakoglu's Response to Supplemental Sections A-C Questionnaire at Exh. S1-12 (Mar. 11,

2022, resubmitted May 19, 2022); Colakoglu's Response to Second Supplemental Sections A-C

Questionnaire (Third Supplemental Questionnaire Response) at Exh. S3-1 (June 6, 2022).

23.     On February 1, 2023, Commerce issued its *Final AD Results*, in which it

continued to rely on invoice date as the date of sale for U.S. sales for both Colakoglu and Kaptan.

*See Final I&D Memo* at 8-12. Commerce determined that Kaptan had not demonstrated that the

material terms of sale were finalized at the contract date and, and relied on invoice date for

Kaptan's U.S. date of sale. *Id.* at 10-11. Commerce similarly stated that it was relying on invoice

date as Colakoglu's U.S. date of sale because Colakoglu did not provide evidence to the record to

differentiate the 2020-2021 AD review from previous reviews, where Commerce had determined

that the material terms of sale changed after the contract date. *Id.* at 12.

24.     In its *Final AD Results*, Commerce also continued to treat Section 232 duties as

U.S. import duties and deduct these duties from U.S. price. *See Final I&D Memo* at 16.

25.     The *Final AD Results* are unsupported by substantial evidence on the record and

are otherwise not in accordance with law with respect to the matters set forth below.

**STATEMENT OF CLAIMS**

**COUNT I**

26.     The facts and allegations contained in paragraphs 1 through 25 are restated and

incorporated herein by reference.

27.     Commerce's decision with respect to Section 232 duties is not based on

substantial evidence or in accordance with law.

28.     Commerce's regulations provide that "normally" Commerce "will use the date of

invoice" as the date of sale unless "a different date better reflects the date on which the exporter

or producer establishes the material terms of sale" 19 C.F.R. § 351.401(i). This review contains

evidence that the contract date "better reflects the date on which" Kaptan and Colakoglu,

respectively, establish the material terms of sale. Instead, Commerce relied on Colakoglu's and

Kaptan's general sales processes and decisions made in prior administrative reviews of rebar of

Turkey to determine date of sale.

29.     Commerce must treat each administrative review as a separate segment and make a determination based on the record of that review. *Shenzhen Xinboda Indus. Co. v. United States*, 456 F. Supp. 3d 1272, 1285 n.22 (CIT 2020) (*Shenzhen Xinboda*) (quoting *Jiaxing Brother Fastener Co. v. United States*, 822 F.3d 1289, 1299) (*Jinxing Brother*)).  Commerce did not rely on the record evidence provided in the 2020-2021 AD review of rebar from Turkey, but relied on past decisions to determine the date of U.S. sales for Kaptan and Colakoglu.

30.     This record includes substantial evidence that the date of sale for Kaptan's U.S. sales is the contract date.  Likewise, this record also includes substantial evidence that the U.S. date of sale for Colakoglu's sales is the sale order date.

31.     The record of the 2020-2021 AD review of rebar from Turkey demonstrates that Kaptan provided information demonstrating that the contract set the price and overall quantity, and these terms were consistent with the terms of the final invoice for all period of review sales. Kaptan's contracts are binding and require that there will be no changes in the terms of the sale. The record also demonstrates that Colakoglu provided information demonstrating that the material terms of sale do not change after its sales order contracts.  Colakoglu's sales contracts are binding and all parties agree that there are no changes in the terms of sale after the contract date.  Thus, Commerce's decision with respect to the date of sale is not in accordance with law or based on substantial evidence.

## COUNT II

32.     The facts and allegations contained in paragraphs 1 through 31 are restated and incorporated herein by reference.

33.     Commerce's decision with respect to Section 232 duties is not based on substantial evidence or in accordance with law.

34.     Commerce should not deduct Section 232 tariffs paid by Kaptan and Colakoglu, respectively, from the export price of its U.S. sales because the Section 232 tariffs are "special" tariffs imposed pursuant to a specific congressional delegation of tariff making authority to the executive branch, rather than ordinary U.S. import duties within the meaning of the antidumping statute. The Section 232 tariffs are remedial, temporary, and treated differently than normal customs duties in the Harmonized Tariff Schedule, and their deduction from U.S. price in the *Final AD Determination* imposes a double-remedy that is contrary to the statute. Commerce's determination to treat the special Section 232 tariffs as ordinary customs duties and deduct the full amount of tariffs paid from Kaptan's and Colakoglu's export price, respectively, is thus unsupported by substantial evidence and is otherwise not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court to:

(a)     Hold that Commerce's *Final AD Results* were not in accordance with law or unsupported by substantial record evidence with respect to the claims advanced by Plaintiff in this Complaint;

(b)     Remand the *Final AD Results* to Commerce for determination consistent with the opinion of this Court; and

Grant such additional relief as the Court may deem just and proper.

                                        **/s/ Leah N. Scarpelli**
                                        Leah N. Scarpelli
                                        Jessica R. DiPietro
                                        Matthew M. Nolan

                                        ArentFox Schiff LLP
                                        1717 K Street, N.W.
                                        Washington, DC 20006
                                        Phone: (202) 715-8403

*Counsel to Kaptan Demir Celik Endustrisi Ve Ticaret A.S., Colakoglu Metalurji A.S. and Colakoglu Dis Ticaret A.S.*

Dated: April 10, 2023